UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | Case No.: 1:24-472-1 (LEK) |
| v.            ) | Honorable Lawrence E. Kahn |
| ) | Senior U.S. District Court Judge |
| MAGNIFICENT BROWN    ) | |
| Defendant.    ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

### Introduction

Magnificent Brown stands before This Court for sentencing subsequent to his January 17, 2025 plea of guilty to a two count information charging him with conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§846 and 841(b)(1)(B), and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(8).

Magnificent was initially charged via felony complaint and made his first appearance before Magistrate Judge Christian Hummell on June 10, 2024. The Court detained Magnificent following a June 12, 2024 detention hearing. Thereafter Mr. Brown was released to drug treatment on August 9,2024. After a period of treatment Magnificent returned to Marshall's custody following a violation of his release conditions.

Following discovery review and investigation by counsel, appreciating the weight of the evidence and mandatory minimum sentence, Magnificent waived his right to indictment and entered a plea to the two-count information detailed above.

### The Factors to be Considered in Imposing Sentence

Congress has set forth specific factors the Court should consider before imposing a sentence. Title 18 U.S.C. § 3553 (a) directs the court to impose a sentence sufficient, but not

greater than necessary, to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most efficient manner. *See*, 18 U.S.C. § 3553 (a) (2).

In fashioning such a "sufficient, but not greater than necessary sentence", the Court must consider the nature and circumstances of the offense; the history and characteristics of the offender; the kinds of sentences available; and the sentencing range established by the guidelines. *See*, 18 U.S.C. § 3553 (a) (1), (3), (4).

## The Nature and Circumstances of the Offense

Mr. Brown and a co-conspirator made controlled sales of cocaine and methamphetamine to a confidential informant between March and June of 2024. Magnificent was personally involved in 80 grams of a mixture containing methamphetamine as well as less than 5.1 grams of cocaine.

## The History and Characteristics of the Offender

Magnificent is 27 years old. He was born on December 13, 1997, in Poughkeepsie, New York. His parents are Ali Teems and Naya Brown. Magnificent's Ali father was shot to death when Magnificent was five years old. He was raised by his mother. He has six siblings and four children. Mr. Brown's youngest child was born after he was incarcerated on the instant charges. Mr. Brown suffers from an autoimmune disease called Graves Disease that affects his thyroid gland and necessitates medication daily.

Magnificent left school during 9th grade. He cannot read or write and suffers from dyslexia. Mr. Brown completed an assessment with Dr. Elizabeth Walker, DSW, LICSW though the office

of the Federal Public Defender that details the psycho-social struggles Mr. Brown faced early in life [attached here as Exhibit "A"]. It is no surprise that he has had run-ins with the law, given the limited resources available to him growing up, and his serious medical and mental disabilities. It is clear that the educational and mental health treatment programs available to Magnificent through Bureau of Prisons will pay long term dividends to him. Given the lengthy mandatory minimum sentence here the opportunities Magnificent will have for rehabilitation will certainly position him to be successful in the community.

## The Guideline Calculation

*Offense Level*

Magnificent's base level offense level is 24 for Count 1 (Conspiracy) pursuant to USSG §2D1.1(a)(5) & (c)(5). The parties agree that the defendant scores a 2-level enhancement pursuant to USSG §2D1.1(b)(1) for the possession of a dangerous weapon. Magnificent' s base level offense for Count 2 (Possession of Firearms by a prohibited person) is 14 pursuant to USSG §2K2.1(a)(6)(A). These two counts group pursuant to USSG §3D1.2(c) & (d). Acceptance of responsibility credit results in a total of 3-levels reduction of his offense level per USSG §3E1.1. and a total offense level of 23.

The defense objects to Probation's application of a an additional 2-level enhancement pursuant to USSG §2D1.1(b)(12) regarding maintenance of a premises for manufacturing or distributing drugs. The facts do not support an enhancement for manufacturing. The only question is if Mr. Brown maintained a premises for purposes of distribution of drugs. USSG §2D1.1 Note 17 addresses the application of this enhancement. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but it must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's

incidental or collateral uses for the premises." Determining the application of this enhancement requires the court to look at the totality of the circumstances. *United States v. Esteras*, 102 F.4th 98, 105 (2nd Cir. 2024). The Circuit has identified factors such a as:

    (i)    The frequency and number of drug sales occurring at the home;

    (ii)    The quantities of drugs bought, sold, manufactured, or stored in the home;

    (iii)    Whether drug proceeds, employees, customers, and tools of the drug trade . . . [were] present in the home; and

    (iv)    the significance of the premises to the drug venture.

*Esteras, supra* at 105 see also: *United States v. Murphy*, 901 F.3d 1185, 1191-92 (10th Cir. 2018); *see also United States v. Melendez-Rosado*, 57 F.4th 32, 39 (1st Cir. 2023); *see also USA v. Cavallaro* U.S. Dist. Ct. NDNY, 1:23-cr-00302-MAD (2-level enhancement not appropriate because location controlled substances were recovered from defendant was not the primary or principal use of the premises within which they were discovered).

    The recent 2nd Circuit case of *Esteras* is distinguishable from ours. In *Esteras* sixty-six grams of fentanyl were located at the relevant premises on the day of Mr. Esteras' arrest. *Esteras supra* at 106. Mr. Esteras expressly admitted during his plea colloquy that he "routinely used his home to store and package fentanyl for redistribution" and tools and supplies associated with that activity were located there. *Id*.

    Here, the factual portion of the plea agreement does not contain any admissions by Mr. Brown that he expressly used his premises for drug storage or sales. There is no indication any packaging or manufacturing took place there. Looking specifically at the factors enumerated by the Circuit in *Esteras*, no facts support the claim that Magnificent sold drugs more frequently out of his home than other locations. Pages seven though nine of PSR detail the drug distribution

activity of the conspiracy. The PSR asserts at least nine different locations used by members of the conspiracy. Magnificent made sales to confidential informants per the PSR as follows:

1. 19 Kossar Place: 2
2. Vehicle near Kossar Place: 1
3. 14 Park Street: 1
4. Vehicle near 10 Healthy Way: 1
5. 15 The Derfl Road: 1
6. 129 Cedar Street: 1

Co-Conspirators made sales at the following additional locations that Magnificent did not:

1. 5 North Main Street: 2
2. 7 Hauschild Steet: 1
3. "Another location" no more specifically described: 1

The controlled sales made by Magnificent Brown and by the conspiracy as a whole were distributed around at least nine different locations. Of the seven controlled buys Magnificent participated in personally and were identified in the PSR, only two happened at the same location. The facts identified in the PSR do not support the assertion that Magnificent maintained any one location more specifically than another for distribution purposes.

Regarding the quantity of drugs sold out of Mr. Brown's home, comparing this case to *Esteras* is useful. On the day of his arrest, Mr. Esteras possessed 66.6 grams of fentanyl in the premises, which he admitted he used for distribution purposes. That amount of fentanyl would qualify as an offense level 24 under USSG §2D1.1. For comparison, Probation has scored the entire drug quantity attributable to Magnificent Brown during his months long participation in the instant conspiracy as an offense level 24. In *Esteras* the defendant possessed a volume of drugs in his residence on the day of his arrest roughly equivalent to the volume Mr. Brown is responsible for over the entire period of this lengthy investigation.

Paragraph 25 of the PSR identifies 19 Kossar Place as Magnificent's residence, but not

the location Magnificent was arrested at (129 Cedar Street), or the location potential controlled substances were located (7 Hauschild St), or where the "tools of the trade" were located (15 The Derfl Road) or where a larger percentage of drug sales took place. Of the sixteen total controlled buys attributed to the conspiracy in the PSR, nine different locations were identified. Magnificent personally made sales at the same place only twice. None of these facts support a determination that Magnificent maintained 19 Kossar Place for the purpose of selling controlled substances as contemplated in USSG §2D1.1(b)(12).

Regardless of how the Court rules on the premises enhancement, Mr. Brown would respectfully request the Court consider a four-point reduction in his total offense level pursuant to USSG §5K2.13. The PSR details at ¶ 72 Mr. Brown's receipt of special education services throughout his schooling he received an individualized education plan (I.E.P.). Mr. Brown cannot read or write and is dyslexic. Following his arrest Mr. Brown completed an assessment with Dr. Elizabeth Walker, DSW, LICSW though the office of the Federal Public Defender [See Exhibit "A"]. That assessment further details the mental health struggles Mr. Brown has experienced throughout his life that would justify a reduction pursuant to §5K2.13. *See United States v. Pallowick,* 364 F. Supp. 2d 923 (E.D. Wis. 2005) (stating that a 46-month sentence was appropriate in a case where the defendant was convicted of six-armed bank robberies, despite a guideline range of 70-87 months, because depression and anxiety disorders played a major role in his conduct).

*Criminal History Score*

The defense adopts Probation's calculations that Mr. Brown scores three criminal history points and therefore falls into Criminal History Category II. Defendant's criminal history points are scored based on a 2013 arrest and 2015 conviction for burglary in the third degree in New York State Court. Defendant was 16 at the time of that arrest.

*Guideline Calculation*

If the Court does not adopt an enhancement under §2D1.1(b)(12), the total offense level would be 23. With Criminal History Category II, Mr. Brown's guideline sentence would be 51-63 months. 21 USC §§ 846 and 841(b)(1)(B) carry s a mandatory minimum sentence of 60 months, therefore the effective guideline range becomes 60-63. If the Court does elect to score the contested enhancement, Mr. Brown's total offense level would be 25 and produce a guideline range of 63-78 months. Should the Court elect to reduce the defendant's offense level by even one level pursuant to §5K2.13 Mr. Brown's minimum guideline range would fall below the mandatory minimum, and the requested four level reduction would place his entire guideline below the mandatory minimum, thus making 60 months the guideline sentence.

## **Sufficient but Not Greater than Necessary Sentence**

A sentence of 60 months is sufficient and not greater than necessary here. Magnificent took responsibility for his actions almost immediately. He has expressed regret for his actions. He understands the gravity and seriousness of his offenses. He realizes the danger that drugs create in the community, and he regrets that his actions exacerbated that threat.

Depending on the exact determinations by the Court as to the appropriate offense level here, Mr. Brown's guideline falls either below the mandatory minimum, straddles it, or falls modestly above it.

Probation identified two possible departures: USSG §4A1.3 regarding Mr. Brown's criminal history, and §5H1.1 based on Mr. Brown's age. These two issues dovetail together, in that Mr. Brown's 2013 New York state arrest and subsequent felony conviction was the product of conduct that transpired when he was sixteen years old. In 2017 New York State passed legislation raising the age of criminal responsibility to eighteen for most criminal cases. *See*

*generally* New York State Criminal Procedure Law Article 722. Had that reform been in effect at the time of Mr. Brown's 2013 conduct in all likelihood he would not have faced criminal prosecution or received a felony conviction. If Mr. Brown did not score three criminal history points for that conduct, he would be criminal history category one, and again, his guideline minimum would fall below the statutory minimum. In sum, while there are many different routes by which the Court could conclude a sentence at the statutory minimum of 60 months is the appropriate sentence, and it is the sentence best supported by these facts.

In reviewing the 18 USC § 3553(a) factors, the mandatory minimum of 60 months is sufficient to meet each of the statutory factors. It reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Five years in prison is more than adequate deterrence. While I would submit that Mr. Brown will right himself during his period of incarceration and not present further risk of criminal behavior, a 60-month sentence certainly is sufficient to protect the public from future crimes, and finally, the lengthy mandatory minimum is more than enough time for Mr. Brown to receive the vocational training and treatment contemplated by the law.

The mandatory minimum sentence is also consistent with average sentences for similarly situated defendants in Mr. Brown's position over the last five fiscal years. Defendants with a criminal history category II, and offense level of 25, who did not receive substantial assistance credit per USSG 5K1.1, were on average sentenced to 48 months and the median sentence was 51 months. As the average sentence for defendants in Mr. Brown's position is below the mandatory minimum he faces, clearly, the fair sentence would be the minimum sentence allowed by law.

**Conclusion**

Magnificent makes no excuses for his behavior and has accepted responsibility for his actions. Based on the nature and circumstances of the offense, his limited criminal history, his personal history and characteristics, the Court should sentence Magnificent to 60-months plus four-years of supervised release.

Dated: May 7, 2025

                                                  LISA PEEBLES
                                                  Federal Public Defender

By:  /s/ Eric K. Schillinger

                                                  Eric K. Schillinger
                                                  *Attorney for Magnificent Brown*
                                                  Bar No.: 516083
                                                  Federal Public Defender Office
                                                  54 State Street, Suite 310
                                                  Albany, New York 12207
                                                  (518) 436-1850
                                                  eric_schillinger@fd.org

## CERTIFICATE OF SERVICE

On the above date the sentence memorandum was filed with the court, and delivered via ECF to the following parties: AUSA Joseph Hartunian, Esq.

Dated: May 7, 2025

                                                     _____
                                                   Eric K. Schillinger
                                                   *Attorney for Magnificent Brown*
                                                   Bar No.: 516083
                                                   Federal Public Defender Office
                                                   54 State Street, Suite 310
                                                   Albany, New York 12207
                                                   (518) 436-1850
                                                   eric_schillinger@fd.org